WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | CR 11-00993-TUC-JGZ (BGM) |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Domingo Concepcion Ibarra-Ramirez, | ) | |
| Defendant. | ) | |

Pending before the Court is Defendant's Motion for New Trial. (Doc. 114.) The Government filed a response (Doc. 117), and Defendant replied. (Doc. 125.) Defendant requests that the Court grant him a new trial in light of newly discovered evidence consisting of the August 6, 2012, report of his private investigator.

For the following reasons, Defendant's Motion is denied.

**FACTUAL BACKGROUND**

1. <u>Charges and Trial</u>

On March 16, 2011, Defendant was charged in a four-count Indictment with possession with intent to distribute methamphetamine, importation of methamphetamine, possession with intent to distribute cocaine, and importation of cocaine. After five continuances, trial was held on March 27, 2012. At trial, the government presented one witness and a stipulation. Customs and Border Protection Officer Christopher Dominguez testified that on February 19, 2011, he was assigned to secondary inspection at the Nogales

1 Port of Entry in Nogales, Arizona, when Defendant, the driver and sole occupant of a 2003
2 Chevrolet Aveo, was referred to secondary for further inspection. During the inspection,
3 Officer Dominguez asked Defendant about ownership of the vehicle. Defendant stated that
4 he was the owner of the Aveo and that he had bought it that day. Agent Dominguez asked
5 Defendant for the vehicle registration and Defendant produced a Mexican registration card
6 which showed that the vehicle was registered in his name. The registration, however,
7 indicated that the vehicle had been registered on December 7, 2010, approximately two
8 months earlier.

9 The vehicle was searched after a canine alerted to the floor area of the driver's side
10 of the car. Methamphetamine and cocaine were found concealed in a non-factory
11 compartment in the floorboard of the vehicle. The parties stipulated that the DEA Southwest
12 Laboratory analyzed the ten packages found in the vehicle, and concluded five packages
13 contained a net weight of 4,952 grams of a mixture containing cocaine and five packages
14 contained a net weight of 2,487 grams of a mixture containing methamphetamine. Officer
15 Dominguez testified that it took agents significant time to extract the drugs because of the
16 efforts that had been made to conceal them in the hidden compartment.

17 The jury convicted Defendant on all four counts in the Indictment.

18 2. Motion in Limine

19 Prior to trial, the Defendant moved to preclude the government from introducing the
20 registration card into evidence on the grounds that the card constituted hearsay. The motion
21 was denied. Defendant then requested a continuance of the trial to research the authenticity
22 of the registration. In denying the request for continuance, the Court found that the
23 Defendant was aware of the registration and its significance as early as April 2011 when the
24 government disclosed Agent McDowell's report which specifically referenced the
25 registration document and explicitly noted the inconsistencies between Defendant's
26 statements as to when he purchased the vehicle and the date of registration shown on the
27 document. The Court further found that a continuance would not satisfy the Defendant's
28 need to investigate the authenticity of the registration because the registration card was

1 admissible as an adoptive admission regardless of its authenticity. The Court noted in its
2 order: "Even if Defendant were to introduce evidence that the vehicle registration lacks
3 authenticity, this would not alter the conclusion that Defendant manifested assent to the
4 contents of the document which he maintained in his vehicle." *See United States v. Ospina*,
5 739 F.2d 448, 451 (9th Cir. 1984) (writings in a defendant's possession are admissible as
6 adoptive admissions where there is evidence that a defendant acted on the writings or
7 otherwise manifested his adoption of them).

8       3. Evidence Presented at Sentencing Hearing

9 After trial, but prior to sentencing, Defendant hired a private investigator, Gilbert
10 Duron, to investigate the legitimacy of the registration of Defendant's vehicle. Mr. Duron
11 determined, and testified at the sentencing hearing, that: (1) the vehicle registration had been
12 fabricated and not issued from a proper agency; (2) the plates of the vehicle belonged to
13 another vehicle that had been taken out of service in February 2011; and (3) the VIN number
14 of the vehicle driven by Defendant was not in the registration agency's records. Mr. Duron
15 further testified that he learned that in Mexico any third party may register a vehicle in
16 another person's name and, in fact, it is done quite often. All that is needed for such a
17 registration is a power of attorney, and the identification of the person in whose name the
18 vehicle is to be placed. A driver's license and/or a voter registration card is sufficient
19 identification.

20 Defendant also testified at the sentencing hearing. He explained that he had given his
21 identification documents to a man he knew only as Guero so that Guero could register the
22 vehicle in Defendant's name. Defendant explained that he had agreed to work for Guero.
23 The work consisted of Defendant driving the vehicle across the border from Nogales,
24 Mexico, to Nogales, Arizona, to pick up money earned in Guero's businesses. The monies
25 were to be delivered to Defendant in the Food City parking lot in Nogales, Arizona, by a
26 person unknown to Defendant. Defendant was told that the delivery person would recognize
27 Defendant's vehicle.
28

- 3 -

Defendant testified that Guero wanted to register a vehicle in Defendant's name to facilitate Defendant's crossing into the United States and Defendant provided Guero with the identification documents to enable Guero to do so. Defendant also testified that although he agreed to have the vehicle registered in his name, he knew that it was not in fact his vehicle.

## ANALYSIS

In his Motion for New Trial, Defendant asserts that Mr. Duron's investigative findings are newly discovery evidence warranting a new trial.

Rule 33, Fed. R. Crim. P., provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." "A district court's power to grant a motion for new trial is much broader than its power to grant a motion for judgment of acquittal." *United States v. Alston*, 974 F.2d 1206, 1211 (9th Cir. 1992). To prevail on a Rule 33 motion for a new trial based on newly discovered evidence, the defendant must satisfy a five-part test: "(1) the evidence is newly discovered; (2) the defendant was diligent in seeking the evidence; (3) the evidence is material to the issues at trial; (4) the evidence is not (a) cumulative or (b) merely impeaching; and (5) the evidence indicates the defendant would probably be acquitted in a new trial." *United States v. Harrington*, 410 F.3d 598, 601 (9th Cir. 2005) (citation omitted). Defendant fails to satisfy the requirements of prongs 1, 2, 3 and 5.

Defendant fails as to the first prong because the information that the vehicle was fraudulently registered in Defendant's name was not newly discovered evidence. The Defendant knew that the registration was fraudulent from the moment he took possession of the vehicle. He testified that he was not the owner of the vehicle, but had agreed to have it registered in his name so that it would appear that he was the owner. Although he may not have been aware at that time that the vehicle was not properly registered in other respects as well, he certainly became aware of the fraudulent nature of the registration when he was provided with Agent McDowell's report which referenced a registration date two months prior to date on which Defendant claims that he gave Guero his identification documents to permit the vehicle to be registered.

As to the second prong, Defendant was not diligent in investigating the legitimacy of the vehicle registration. Defendant was charged by complaint on February 22, 2011, counsel was appointed on February 24, 2011, and the Indictment was returned on March 16, 2011. As noted above, Defendant was aware of the existence of the registration and its significance at the earliest, when he received possession of the vehicle, or at the latest in April 2011, when the government provided Defendant with Agent McDowell's report. Defendant knew the date he gave Guero his identification documents so that the vehicle could be registered in Defendant's name. Thus, he would have known that the December 7, 2011, registration date shown on the registration card was fraudulent. And, by the time of trial on March 28, 2012, Defendant would have been aware of the inconsistencies in the vehicle registration for over a year.[1]

The third prong - materiality of the evidence to the issues at trial - does not support Defendant's request for a new trial. The fact that the vehicle was fraudulently registered is not probative of any of the elements of the offense. As the government argued, it did not matter whether the registration was valid or not; what was significant was that the Defendant represented the vehicle to be his own. In fact, introduction of the new evidence would likely be to Defendant's detriment. If admitted, the jurors would learn that the vehicle driven by Defendant was: (1) fraudulently registered to him; (2) fitted with license plates that belonged to another vehicle that had been taken out of service in February 2011; and (3) contained a VIN number that was not in the Mexican agency's records. In combination with evidence that Defendant claimed to own the fraudulently registered vehicle, jurors could infer that Defendant was complicit in the false registration and falsely claimed the vehicle was his own in an attempt to avoid search of the vehicle at the Port of Entry. Notably, Officer Dominguez

---

[1] Defendant claims that he needed a copy of the actual registration card, which contained the folio numbers and other identifying features, to aid his investigator's search. The fact that Defendant did not receive a copy of the vehicle's registration until March 19, 2012, does not change the Court's view that as early as April 2011, Defendant was on notice of the discrepancy in the registration date and the need to investigate the legitimacy of the registration if Defendant believed that doing so would be beneficial to his case.

- 5 -

1 testified that when he is inspecting cars and a driver states he is crossing a vehicle that is not
2 his own, it raises a red flag for Officer Dominguez that further inspection is warranted.

3 The fact that the registration was fraudulent was also immaterial as to the admissibility
4 of the registration document. As the Court found in its *in limine* order, the vehicle
5 registration was admissible as proof that Defendant manifested his assent to the contents of
6 the document, legitimate or illegitimate as the registration may be, when he handed Officer
7 Dominguez the registration as proof of his ownership of the vehicle.

8 Finally, as to the fifth prong, the new evidence does not indicate that Defendant would
9 probably be acquitted at a new trial. As noted above, the legitimacy of the registration is
10 immaterial to: (1) its admissibility as an adoptive admission, and (2) Defendant's knowledge
11 of the concealed contraband. Evidence introduced at trial consisted of Defendant's claim that
12 he owned the vehicle, the inconsistency as to the date of that ownership and the date shown
13 on the registration card, and the large quantity of cocaine and methamphetamine found inside
14 the vehicle. New evidence proving that the registration was in fact fraudulent would not
15 diminish this evidence.

16 Defendant argues that "the government's effective argument that [defendant] gave
17 contradictory statements to the border agents would have been substantially diminished and
18 perhaps completely discredited based upon the explanation as to how the registration was
19 obtained through fraudulent means, including possibly by a third party or corrupt Fiscal
20 Agency employer." (Doc. 125, pg. 7.) However, Defendant's contradictory statements were
21 not admitted at trial. After the Magistrate Judge recommended suppressing statements made
22 by Defendant during interrogation, the government agreed not to introduce at trial the
23 inconsistent statement as to ownership which Defendant made during that interrogation. The
24 only statement introduced at trial was Defendant's statement to Officer Dominguez during
25 inspection that Defendant purchased the vehicle that day. The new evidence would highlight
26 the falsity of that statement, not diminish it.

27 Defendant also suggests that the "fraudulent registration would have permitted the
28 defense to posit that Mr. Ibarra-Ramirez's contention that he was given the car the day of his

arrest in order to facilitate him being used as either a decoy or a blind mule with no knowledge of contents of the vehicle and thus certainly effect the outcome of the jury's verdict." (Doc. 125, pg. 8.) This argument ignores the fact that Defendant knew the car was fraudulently registered to him. The fact that Defendant could introduce evidence confirming that the registration was false, would thus not likely change the trial result.

ACCORDINGLY, IT IS ORDERED that Defendant's Motion for New Trial (Doc. 114) is DENIED.

Dated this 3rd day of October, 2012.

_____
Jennifer G. Zipps
United States District Judge